UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ESTATE OF MICHAEL MURPHY, by and through Rose Murphy as Personal Representative; ROSE MURPHY; CHARITY WILEY; DERRICK MURPHY; and MANDY COUCH,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 4:17-CV-00444-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it Defendant's Motion to Dismiss (Dkt. 11). The motion is fully briefed and the Court finds these matters appropriate for decision without oral argument. For the reasons explained below, the Court will grant the motion in part, and deny the motion in part.

## BACKGROUND

This is a medical malpractice and wrongful death case. Plaintiffs include the Estate of Michael Murphy ("Estate"); Rose Murphy, the widow of Michael Murphy; and the children of Michael Murphy: Charity Wiley, Derrick Murphy, and Mandy Couch. *Compl.* ¶¶ 1-5, Dkt. 1. Plaintiffs allege that Michael Murphy ("Mike") was in the care of the Department of Veteran Affairs ("DVA"), an agency of Defendant United States of

America. *Compl.* ¶ 12, Dkt. 1. The U.S. has authorized suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680.

Plaintiffs allege that on May 20, 2014, Mike reported to the DVA clinic in Pocatello, Idaho with complaints of regurgitation, pain when swallowing, and food and pills sticking in his lower esophagus. *Compl.* ¶ 9. The treating physician, Dr. Mark Butler, sent a request to the Veterans Hospital in Salt Lake City, Utah for a pill swallow and barium study, and an esophagogastroduodenoscopy (EGD). *Compl.* ¶ 10, Dkt. 1. In the request, Dr. Butler instructed the Salt Lake physicians to cancel the tests if they deemed them unnecessary. *Id.* Dr. Charles Krueger of the Veterans Hospital in Salt Lake City ultimately cancelled the tests. *Id.*

On April 3, 2015, Mike returned to the DVA and Dr. Butler with complaints that his symptoms were worsening. *Compl.* ¶ 11, Dkt. 1. Dr. Butler ordered an urgent EGD. *Id.* On April 23, 2015, a pathology report following the EGD showed that Mike had esophageal cancer. *Id.* Mike Murphy passed away on September 8, 2015, after a fall. *Compl.* ¶ 12. The fall injured Mike Murphy's weakened esophagus, and an uncontrolled esophageal hemorrhage caused his death. *Id.*

Plaintiffs allege that the U.S. failed to appropriately diagnose and timely treat Mike, and that this failure substantially contributed to Mike's death. *Id.* The Estate of Michael Murphy is seeking damages including medical expenses, out-of-pocket expenses, and loss of benefits and earnings during Mike's life. *Compl.* ¶ 13. Rose Murphy, as Mike's widow, is seeking damages including loss of consortium, loss of

household services, and loss of wages and income. *Compl.* ¶ 15. Mike's children are seeking damages including loss of society, care, comfort, and companionship of Mike.

The U.S. now moves to dismiss the Estate's claim to recover for loss of benefits. *Def.s Brief* at 2, Dkt. 11-1. The U.S. also moves to dismiss the claim of Mike's children, and to dismiss them as plaintiffs from this case. *Def.s Brief* at 4, Dkt. 11-1.

## LEGAL STANDARD

**1.  Motion to dismiss under Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*.  Where a complaint

pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id*. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by

the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted).

2. **Federal Tort Claims Act**

Under the FTCA, the United States may waive its sovereign immunity under circumstances where the United States would be liable if it were a private person. *United States v. Olson*, 546 U.S. 43, 44 (2005). The "law of the place where the act or omission occurred" is the appropriate law to apply in determining the United States' liability. 28 U.S.C. § 1346(b)(1); *Olson*, 546 U.S. at 45-46. Here, the United States has waived its sovereign immunity, and the appropriate law to apply is Idaho tort law.

## ANALYSIS

A. **Estate's Claims for Benefits**

In Count One of the Complaint, the Estate is seeking to recover damages for, *inter alia*, loss of benefits and earnings under Idaho Code § 5-327(2). *Comp.* ¶ 13, Dkt. 1. In its response brief, the Estate lists three benefits it seeks to recover. *Pl.'s. Resp.* at 2, Dkt. 17. First, the Estate seeks income which would have been earned by Mike prior to his death. *Id.* Second, the Estate seeks to recover benefits referred to by the DVA in a letter sent August 19, 2015. *Id.* The Estate attached a copy of the August 19 letter but did not identify the benefits to which the letter referred. It appears the benefits listed in the

August 19 letter include potential benefits based on Mike's dependency status, Dependents' Educational Assistance benefits, CHAMPVA healthcare and supplies cost-sharing benefits, and waiver of government life insurance premiums. *Pl.'s Resp.,* Dkt. 17-1. Third, the Estate seeks to recover payment of funeral expenses, provided for in an unidentified provision from the DVA, which the Estate assumed would pass to the personal representative. *Pl.'s Resp.,* Dkt. 17.

Under Idaho Code § 5-327(2) the Estate may not recover for the loss of any of these benefits. Idaho Code § 5-327(2) lists three limited categories under which a plaintiff may recover in a cause of action after the death of an injured person:

> …the damages that may be recovered in such action are expressly limited to those for: (i) medical expenses actually incurred, (ii) other out-of-pocket expenses actually incurred, and (iii) loss of earnings actually suffered, prior to the death of such injured person and as a result of the wrongful act or negligence.

Idaho Code § 5-327(2). First, the Estate may not recover the income which would have been earned by Mike under Idaho Code § 5-327(2) and label it a "benefit." The statute does not allow for recovery of benefits. However, subsection (iii) provides that loss of earnings may be recovered to the extent that the earnings were lost during Mike's life and were lost as a result of the U.S.'s wrongful act or negligence. In its Complaint, separate from its identification of the benefits it seeks, the Estate asks for "loss of benefits and earnings during the life of Mike Murphy." *Compl.* ¶ 13, *Dkt. 1*. It is therefore not barred from seeking recovery for these damages. It simply must do so under

August 19 letter include potential benefits based on Mike's dependency status, Dependents' Educational Assistance benefits, CHAMPVA healthcare and supplies cost-sharing benefits, and waiver of government life insurance premiums. *Pl.'s Resp.,* Dkt. 17-1. Third, the Estate seeks to recover payment of funeral expenses, provided for in an unidentified provision from the DVA, which the Estate assumed would pass to the personal representative. *Pl.'s Resp.,* Dkt. 17.

Under Idaho Code § 5-327(2) the Estate may not recover for the loss of any of these benefits. Idaho Code § 5-327(2) lists three limited categories under which a plaintiff may recover in a cause of action after the death of an injured person:

> …the damages that may be recovered in such action are expressly limited to those for: (i) medical expenses actually incurred, (ii) other out-of-pocket expenses actually incurred, and (iii) loss of earnings actually suffered, prior to the death of such injured person and as a result of the wrongful act or negligence.

Idaho Code § 5-327(2). First, the Estate may not recover the income which would have been earned by Mike under Idaho Code § 5-327(2) and label it a "benefit." The statute does not allow for recovery of benefits. However, subsection (iii) provides that loss of earnings may be recovered to the extent that the earnings were lost during Mike's life and were lost as a result of the U.S.'s wrongful act or negligence. In its Complaint, separate from its identification of the benefits it seeks, the Estate asks for "loss of benefits and earnings during the life of Mike Murphy." *Compl.* ¶ 13, *Dkt. 1*. It is therefore not barred from seeking recovery for these damages. It simply must do so under

the plain language of Idaho Code § 5-327(2), and not under the theory that it is a "benefit."

Second, the Estate may not recover for the benefits listed in the August 19 letter. The potential benefits based on Mike's dependency status, Dependents' Educational Assistance benefits, CHAMPVA healthcare and supplies cost-sharing benefits, and waiver of government life insurance premiums listed in the August 19 letter do not fit into one of the three categories listed in Idaho Code § 5-327(2).

Third, the Estate may not use Idaho Code § 5-327(2) to recover the funeral expenses it assumed would be incurred by the personal representative. There is no mention of funeral expenses in Idaho Code § 5-327(2). The Estate does not identify which provision in Idaho Code § 5-327(2) provides for recovery of funeral expenses. In fact, the Estate does not identify the source of the provision from the DVA that the Estate claims entitles it to funeral expenses. Since none of the benefits the Estate lists in its response brief fit into any of the permissible categories for recovery listed in Idaho Code § 5-327(2), the United States's motion will be granted.

B. **Claims of Mike's Children**

Mike's children seek damages including loss of society, care, comfort, and companionship under Idaho Code § 5-311. *Compl.* ¶ 15, Dkt. 1. They bring their claim under Idaho Code § 5-311. Subsection (1) of that statute provides, in relevant part,

> When the death of a person is caused by the wrongful act or neglect of another, his or her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death…. If any other person is responsible for any such wrongful act or neglect, the

the plain language of Idaho Code § 5-327(2), and not under the theory that it is a "benefit."

Second, the Estate may not recover for the benefits listed in the August 19 letter. The potential benefits based on Mike's dependency status, Dependents' Educational Assistance benefits, CHAMPVA healthcare and supplies cost-sharing benefits, and waiver of government life insurance premiums listed in the August 19 letter do not fit into one of the three categories listed in Idaho Code § 5-327(2).

Third, the Estate may not use Idaho Code § 5-327(2) to recover the funeral expenses it assumed would be incurred by the personal representative. There is no mention of funeral expenses in Idaho Code § 5-327(2). The Estate does not identify which provision in Idaho Code § 5-327(2) provides for recovery of funeral expenses. In fact, the Estate does not identify the source of the provision from the DVA that the Estate claims entitles it to funeral expenses. Since none of the benefits the Estate lists in its response brief fit into any of the permissible categories for recovery listed in Idaho Code § 5-327(2), the United States's motion will be granted.

B. **Claims of Mike's Children**

Mike's children seek damages including loss of society, care, comfort, and companionship under Idaho Code § 5-311. *Compl.* ¶ 15, Dkt. 1. They bring their claim under Idaho Code § 5-311. Subsection (1) of that statute provides, in relevant part,

> When the death of a person is caused by the wrongful act or neglect of another, his or her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death…. If any other person is responsible for any such wrongful act or neglect, the

> action may also be maintained against such other person…. In every action under this section, such damages may be given as under all the circumstances of the case as may be just.

The term "heirs" includes the decedent's spouse, children, stepchildren, and parents. Idaho Code § 5-311(2)(b). Under this statute, Plaintiffs Charity Wiley, Derrick Murphy, and Mandy Couch can maintain an action against the U.S. for damages "as may be just," including for the loss of society, care, comfort, and companionship of Mike.

This reading of Idaho Code § 5-311 is not inconsistent with the holding in *Garriott v. W. Med. Assocs., PLLC*, 2017 WL 3015872 (D. Idaho July 14, 2017) as suggested by the United States. In *Garriott* the court determined that neither the Idaho Legislature nor Idaho courts recognize a loss of consortium claim when brought by the children of an injured parent. *Id.* at *4. The present case is distinguishable for two reasons. First, unlike the injured parent in *Garriott*, Mike is deceased. Second, unlike the claim brought by the children in *Garriott*, the claim brought here by Mike's children is not for loss of consortium.

Mike's children can bring their claim because Mike is not merely injured, but deceased. The holding in *Garriott* is limited to cases where the parent is injured. Moreover, Idaho Code § 5-311 explicitly applies to cases of wrongful death. As the heirs of Mike, who is deceased, Plaintiffs Charity Wiley, Derrick Murphy, and Mandy Couch are entitled to bring this wrongful death action, despite Defendant's contention that "death is the ultimate injury." *Def.'s Reply* at 2, Dkt. 18.

Additionally, Mike's children do not bring a loss of consortium claim, as Defendant contends. Under Idaho law, a claim for loss of consortium is limited to claims brought by a spouse and includes a claim for, *inter alia*, loss of conjugal affection or sexual relations. *See e.g., Conner v. Hodges*, 333 P.3d 130, 138 (2014); *Vannoy v. Uniroyal Tire Co.*, 726 P.2d 648, 657 (Idaho 1985) (an award for "loss of consortium should be supported by substantial competent evidence of the loss of services, society, companionship, *sexual relations*, etc." regarding the relationship between a husband and wife) (emphasis added); *Phillips v. Erhart* 254 P.3d 1, 10 (Idaho 2011) (a claim for loss of consortium provides for loss of comfort, companionship, aid, care, and *conjugal affection* between spouses). Although a claim for loss of consortium may include a claim for loss of society, care, comfort, and companionship, that does not mean that every plaintiff who brings a claim for loss of society, care, comfort, and companionship necessarily brings a loss of consortium. Indeed, in discussing Idaho Code § 5-311, the Idaho Supreme Court noted that parties other than spouses can sue for damages as "the case may be just," including for the loss of protection, comfort, society, and companionship. *Hayward v. Yost*, 242 P.2d 971, 977 (1952).

Mike's children seek damages for the loss of society, care, comfort, and companionship. Absent from the damages they seek is a claim for loss of conjugal affection or sexual relations. Lacking these necessary requests, the children's claim cannot be a for loss of consortium. In fact, the only plaintiff to bring a claim for loss of

consortium is, appropriately, Mike's wife, Rose Murphy. *Compl.* ¶ 15, Dkt. 1. Accordingly, the children's claims will not be dismissed.

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion to Dismiss (Dkt. 11) is **GRANTED in part** and **DENIED in part**. It is granted as to the Estate's claim for benefits and denied as to the Children's claims.

DATED: May 7, 2018

_____
B. Lynn Winmill
Chief U.S. District Court Judge